JOHN D. COOPER *vs.* NANCY BENSON.

By the act of 1850, abolishing the forms of pleading, no complete and well-defined system of pleading being established by that act, it is not to be presumed that any substantial remedy for a wrong was intended to be taken away, but only the form of asserting it was intended to be altered. That act provides against the application of technical rules to proceedings instituted under it, and declares, " that in the construction of a pleading, for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties." § 7.

The judge is required by that act to apply the law, not as it is settled and can be ascertained, but to administer it according to the object intended, and with a view to the uncertain rule of " substantial justice between the parties." *Held*, that applying the principle which the legislature had in view, the petition in this case must be regarded as seeking a recovery of the land in controversy, and as tantamount to an action of ejectment under the rules of the common law.

The title stated must be considered in law as an estate for life; for such is the effect of a general devise by the common law, not limiting any specific estate; and the recovery will be coextensive with that title.

Cooper *v.* Benson.

Where a testator provides in his will for the disposition of his property, and uses these words: "I give and bequeathe unto my beloved wife N. B. all my real estate, with household and kitchen furniture, plantation and blacksmith tools, &c., and the balance of my negroes that are not bequeathed to my children, including stock of all descriptions and one wagon, three men that I have left to my beloved wife N. B., are to work as follows, for the use of the plantation," raising the slaves, "and that my son, J. B., be educated and raised out of the proceeds of my plantation, at the discretion of my executors; and when my son J. B. becomes of age, my beloved wife receive her dower, and that she remain on the plantation during her natural life, and at the death of my beloved wife N. B., my plantation be equally divided among my children:"—*Held*, that this provision bequeathes to the wife no other estate but her right of dower, and the right to remain on the plantation during her life.

In error from the circuit court of Lawrence county; Hon. Wiley P. Harris, judge.

This was a petition filed in the circuit court of Lawrence county by Nancy Benson, and the petition states that Nancy Benson is the widow of Henry Benson, deceased, late of, &c.; that the said Henry Benson, at the time of his death, was lawfully seized and possessed of the following quarter lot or section of land in Lawrence county, namely, south-west quarter of section twenty, township six, range twenty west, containing $159\frac{95}{100}$ acres; that said Henry Benson, by will, devised said quarter section to her, and that said last will, &c., was duly probated in Lawrence county, November term, 1828; that she has the lawful right and title to said land, and also the right to immediate possession thereof; notwithstanding which defendant, John D. Cooper, is now in possession of said land, &c., and holds the same against the consent and desire of plaintiff, and refuses to give them up; prays judgment for the land, and that defendant be ejected and judgment for $500, the rents, and for damages.

The answer denies that she ever acquired title to said land by the will of Henry Benson, or otherwise; denies that she has title or right of possession; says that he purchased said quarter section from James Cannon and wife, for a valuable consideration, without notice of any adverse claim, on 5th August, 1850, and he was put in peaceable possession; that said land was

sold by the tax collector for taxes due thereon about 10th of April, 1848, when said Cannon became the purchaser; refers to tax collector's deed; that plaintiff knew of the sale, acquiesced therein, and failed to redeem.

The collector's deed recites that he sold the land as the property of Herod Benson, the reputed owner, amounting to the sum of $5.25, for 1846 and 1847. There is then a demurrer to the answer, which is overruled, and leave to file a replication. The replication to the answer says that defendant derived no title from said James Cannon and wife, for the reason that grantors had themselves no title to convey, and plaintiff respectfully submits that a conveyance of land to a purchaser, without notice of an outstanding title, by grantors without title, would not operate to divest the real owner of his, her, or their legal rights, although the same may be put into peaceable possession of the same; denies that the land was sold for taxes to Cannon and wife, and she submits and insists, respectfully, that the deed, made a part of said answer, does not constitute a good and legal conveyance, even of the land therein described, to the purchaser named therein; also insists, and respectfully submits, that the omissions in said exhibit A. cannot be supplied by averments in the pleadings, or by proof on the trial, as they constitute patent ambiguities. Plaintiff avers that the land described was not legally sold by the tax collector, even if it could be made to appear that the same had been sold for the taxes of any one. Plaintiff also insists, that the lands of Henry Benson could not be sold for the taxes of Herod Benson, and she denies that the land was ever sold legally as the land of Henry Benson for the taxes.

The jury found a verdict for the plaintiff, Nancy Benson, and the defendant prayed a writ of error to this court.

*D. Mayes*, for appellant.

No counsel for appellee.

Mr. Justice HANDY delivered the opinion of the court.

This was a complaint filed under the provisions of the act of

1850, in relation to pleadings in actions at law, by the defendant in error against the plaintiff, in the circuit court of Lawrence county, alleging that Henry Benson died seized and possessed of a certain described tract of land lying in that county, and that by his last will and testament he devised the same to the plaintiff; that she has the lawful right and title to the land, and also to the immediate possession of it; and that the defendant is in possession and refuses to deliver it to the plaintiff, and prays judgment against the defendant for the land, &c., that he may be ejected, and that she may be put in possession, and for damages for rents and profits, &c.

The defendant, in his answer, denies that the plaintiff acquired a title to the land by the will of Henry Benson, or that she has any title otherwise; and states other grounds of defence which are not insisted on here.

On the trial, the jury found a verdict for the plaintiff as follows:—"We, the jury, find for the plaintiff, and assess her damages for the issues, rents, and profits of said premises to one hundred dollars." Judgment was rendered for the plaintiff, and the defendant prosecutes this writ of error.

Several objections are raised to the proceedings of the court below; but the merits of the case render it necessary to consider only two of them.

In the first place, it is objected that the petition is defective in not specifying the nature and quantity of the plaintiff's interest, whether in fee, for life, or for years, and that the judgment is uncertain as to whether the fee, or an estate for life or for years, was intended to be adjudged to the plaintiff.

The action was brought under the provisions of the act of 1850, abolishing the forms of pleadings in civil actions existing before that time. No complete and well-defined system of pleadings being established by that act in lieu of the system which existed under the rules of the common law, it is not a little difficult to apply the rules and principles of law to cases arising under the operation of the act. And in many cases the only guide afforded, is to be found in the general object indicated by the act, to abolish previous forms and to simplify the

modes of pleading, by dispensing with all that technical ma-
chinery which prevailed under the rules of the common law.

It was unquestionably a part of the object of the legislature
to abolish the action of ejectment in form, and to get rid of its
technical rules, and at the same time to provide, by the general
rules established, a remedy and mode of proceeding which would
answer the purposes of that action. In the absence of properly
defined rules declaring how the object contemplated was de-
signed to be carried out, it is not to be presumed that any sub-
stantial remedy for a wrong·was intended to be taken away,
but that the form only of asserting it was intended to be altered.
It could not, therefore, be presumed that it was intended to de-
prive a party of all forms of action to recover possession of
lands to which he was entitled for life or for a term of years.

In order to prevent injury to the rights of parties by so great
an innovation upon established rules and practice as was intro-
duced by this act, it provides against the application of techni-
cal rules to proceedings instituted under it, and enacts " that in
the construction of a pleading for the purpose of determining its
effect, its allegations shall be liberally construed with a view to
substantial justice between the parties." § 7.

In the application of this rule and in carrying out the policy
designed by the statute, many questions of the greatest impor-
tance must unavoidably depend, for their solution, upon judicial
discretion, without any satisfactory and certain legal landmarks
by which to be governed, thus leaving the judge, not to apply
the law as it is settled and can be ascertained, but to administer,
as far as he can, a novel experiment of legislation, according to
the object intended and with a view to the uncertain rule of
" substantial justice between the parties."

Applying the principle which the legislature have prescribed,
to this case, we think that the petition must be regarded as
seeking a recovery of the possession.of the land in controversy
and as tantamount to an action of ejectment, under the rules of
the common law. It claims that the plaintiff has " the lawful
right and title to the land, and also to the immediate possession
of it," and prays judgment against the defendant for the land,

that he may be ejected and that the plaintiff may be put in possession. These allegations would not be a sufficient foundation for a writ of right, and we think they must be considered as having the same effect as if the plaintiff had sued in ejectment. The recovery could not, of course, extend further than to the possession, and the verdict and judgment must be confined to that which was comprehended in the petition, and are no further conclusive upon the rights of the parties than a judgment in ejectment would have been. The petition alleges that Henry Benson, who died seized and possessed of the land, devised it to the plaintiff, showing no other limitation of the estate, but averring that she has the lawful right and title to the land and to immediate possession. The title thus stated must be considered in law as an estate for life, for such is the effect of a general devise not limiting any specific estate by the common law, 2 Black. Comm. 121, 122, and the recovery would be coextensive with that title.

We are of opinion, therefore, that the objection to the sufficiency of the petition and the verdict and judgment, is not tenable.

The other question to be considered is, What title did the plaintiff take under the will of Henry Benson?

We have above seen that an estate for life must be considered as having been demanded and adjudged to her. Let us examine what estate she acquired under the will, which contains the following clause : —

" Also, I give and bequeathe unto my beloved wife, Nancy Benson, all my real estate, with household and kitchen furniture, plantation and blacksmith tools, &c., and the balance of my negroes that are not bequeathed to my children, including stock of all descriptions and one wagon, three men that I have left to my beloved wife, Nancy Benson, are to work as follows for the use of the plantation," naming the slaves, " and that my son Job Benson, be educated and raised out of the proceeds of my plantation, at the discretion of my executors, and that when my son Job Benson becomes of age, my beloved wife, Nancy Benson, receive her dower, and that she remain on the plantation during her natural life, and at the death of my beloved wife,

Nancy Benson, my plantation be equally divided among my children."

It would appear from the first part of this clause of the will, that the testator intended to give his real estate to his wife, either in fee or for life. But the subsequent provisions are entirely inconsistent with such a disposition, and leave her with no other estate in the land but her right of dower and the right to remain on the plantation during her life; and provision is made when she shall receive her dower. The will cannot, then, be construed as vesting a life-estate in the widow.

Taking the entire clause together, we think the true intention and proper construction of it must be held to be, that his wife should have the use and possession of his real estate and the personal property specified until his son Job became of age, and that in the mean time his son Job should be raised and educated out of the proceeds of the plantation, and upon his becoming of age, that the widow should receive her dower and remain on the plantation, which was not to be divided among his children until the death of his widow.

The judgment, in this case, is in opposition to this construction of the will. It is, therefore, reversed, and the case remanded for a new trial.